UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KHOU M. CHANG,<br><br>        Plaintiff,<br><br>    v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>        Defendant. | ) Case No.: 1:11-cv-02002 - JLT<br>)<br>) ORDER DIRECTING ENTRY OF JUDGMENT IN<br>) FAVOR OF DEFENDANT MICHAEL J. ASTRUE,<br>) COMMISSIONER OF SOCIAL SECURITY, AND<br>) AGAINST PLAINTIFF KHOU M. CHANG<br>)<br>)<br>)<br>)<br>) |

Khou M. Chang ("Plaintiff") asserts he is entitled to supplemental security income under Title XVI of the Social Security Act. Plaintiff argues the administrative law judge ("ALJ") erred at step three of the sequential evaluation. Therefore, Plaintiff seeks judicial review of the administrative decision denying benefits. For the reasons set forth below, the ALJ's decision is **AFFIRMED**.

**PROCEDURAL HISTORY**

Plaintiff filed an application for supplemental security income April 16, 2008, alleging disability beginning January 13, 2006.[1] (Doc. 12-3 at 12). The Social Security Administration denied his claim initially and upon reconsideration. *Id.* After requesting a hearing, Plaintiff testified before an ALJ at a hearing held November 2, 2010. *Id.* The ALJ determined Plaintiff was not disabled under

---

[1] As noted by the ALJ, Plaintiff had two prior applications for benefits. (Doc. 12-3 at 12). Consequently, ALJ could not consider a disability onset date before February 28, 2008, the date of the last decision. *Id.*

the Social Security Act, and issued an order denying benefits on July 30, 2010. *Id.* at 12-21. Plaintiff requested a review by the Appeals Council of Social Security, which found no reason to change the ALJ's decision on October 3, 2011. *Id.* at 2. Therefore, the ALJ's determination became the decision of the Commissioner of Social Security ("Commissioner").

Plaintiff initiated this action on December 2, 2011, seeking review of the Commissioner's decision. (Doc. 1). On August 16, 2012, Plaintiff filed his opening brief, seeking review of the Commissioner's decision. (Doc. 15). Defendant filed a brief in opposition on September 10, 2012. (Doc. 16).

## STANDARD OF REVIEW

District courts have a limited scope of judicial review for disability claims after a decision by the Commissioner to deny benefits under the Social Security Act. When reviewing findings of fact, such as whether a claimant was disabled, the Court must determine whether the Commissioner's decision is supported by substantial evidence or is based on legal error. 42 U.S.C. § 405(g). The ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal standards were applied and the findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938)). The record as a whole must be considered, because "[t]he court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion." *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

## DISABILITY BENEFITS

To qualify for benefits under the Social Security Act, Plaintiff must establish he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in

the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).  The burden of proof is on a claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).  When a claimant establishes a prima facie case of disability, the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial gainful employment.  *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

## DETERMINATION OF DISABILITY

To achieve uniform decisions, the Commissioner established a sequential five-step process for evaluating a claimant's alleged disability.  20 C.F.R. §§ 416.920 (a)-(f).  The process requires the ALJ to determine whether Plaintiff (1) engaged in substantial gainful activity during the period of alleged disability, (2) had medically determinable severe impairments (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional capacity to perform to past relevant work or (5) the ability to perform other work existing in significant numbers at the state and national level.  *Id.*  The ALJ must consider objective medical evidence and opinion (hearing) testimony.  20 C.F.R. §§ 416.927, 416.929.

### A.   Relevant Medical Opinions

Dr. Tzhar Hasan conducted an internal medicine evaluation on June 30, 2006.  (Doc. 12-8 at 14-18).  Plaintiff "complained of headaches, low back pain, abdominal pain, depression, nightmares, generalized body aches and weakness" in his hands and legs.  *Id.* at 14.  Plaintiff stated he had "asthma for which he use[d] inhalers and . . . had no recent exacerbation."  *Id.*  Dr. Hasan noted Plaintiff exerted "[n]o effort . . . with grip strength testing," and his range of motion was within normal limits for all extremities.  *Id.* at 15-18.  Dr. Hasan observed Plaintiff appeared malnourished and had a "[s]ignificant cough during the examination" with "[m]ild-to-moderate severe wheezing."  *Id.* at 16.  According to Dr. Hasan, Plaintiff had "poor respiratory effort."  *Id.* at 18.  Therefore, Dr. Hasan concluded: "The patient can lift and carry 10 pounds occasionally and frequently.  The patient can stand and walk six hours out of an eight hour work day with normal breaks.  The patient can sit without restriction."  *Id.*

Dr. Sadda Reddy completed a physical residual functional capacity assessment on August 22, 2006, and noted Plaintiff suffered from asthma, arthralgias and abdominal pain. (Doc. 12-8 at 30-35). Dr. Reddy observed that "multiple notes and exams indicate that there have been no significant or material changes in complaints or findings" since Plaintiff's prior application for benefits. *Id.* at 32. Accordingly, Dr. Reddy adopted the ALJ's decision from October 2005 that Plaintiff could perform a heavy RFC with respiratory precautions. *Id.* Dr. Reddy explained Plaintiff's lack of effort on testing "raises serious questions about credibility" and Dr. Hasan's findings were "too restrictive." *Id.*

On September 3, 2008, Dr. Rustom Damania performed a consultative examination. (Doc. 12-8 at 58-62). Plaintiff reported he had "weakness in his entire body, chronic headaches, low back pain, and bronchial asthma. *Id.* at 58. Dr. Damania observed Plaintiff was "well-nourished . . . in no acute distress or discomfort." *Id.* at 59. According to Dr. Damania, Plaintiff "was waiting in the waiting room for some time for the interpreter to arrive and did not cough," but "[a]s soon as he entered the examining room he coughed throughout the exam." *Id.* Based upon the testing and observations, Dr. Damania opined:

> There was no major objective evidence other than some wheezing found today. Even though the patient is reluctant to do range of motion, patient should be able to lift and carry 20 pounds occasionally and 10 pounds frequently. The patient should be able to stand and walk without restriction. The patient should be able to sit without restriction. The patient does not require an assistive device for ambulation. No postural limitations to bending, stooping or crouching as no deformities were found. Plaintiff was reluctant to do these ranges of motion. No manipulative limitations. No relevant visual or communicative impairments. Due to his bronchial asthma, he would have workplace environmental limitations.

(Doc. 12-8 at 61). Further, Dr. Damania noted Plaintiff "was not fully cooperative" on the motor strength test, and "declined to coordinate." *Id.* at 60-61.

Dr. De La Rosa reviewed the record on September 26, 2008, and found "inconsistencies" in Plaintiff's allegations. (Doc. 12-8 at 71). For example, Dr. De La Rosa noted Plaintiff asserted his asthma was "so severe he cannot do any household activity yet is not on steroid inhaler or medication for control." *Id.* Also, Dr. De La Rosa noted Plaintiff "did not put forth best effort" at the consultative examination, and opined there was "insufficient evidence to adjudicate." *Id.* at 72. Dr. John Bonner affirmed this finding on April 15, 2009. *Id.* at 84.

Dr. Nicholas Orme treated Plaintiff for his asthma and shortness of breath, and performed pulmonary function tests on February 17, 2010 and August 16, 2010 (Doc. 12-9 at 5, 11). On August 16, Plaintiff's pre-bronchodilator FVC score was 0.86 with a post-bronchodilator score of 1.06, and his pre-bronchodilator FEV1 score was 0.85 with a post-bronchodilator score of 1.05. *Id.* at 5. The report indicates these results were not reproducible. *Id.*

**B.     Hearing Testimony**

Plaintiff testified at a hearing before the ALJ with the assistance of an interpreter on November 2, 2010. (Doc. 12-3 at 29). Plaintiff stated he was unable to read or write in English, or any other language. *Id.* at 33-34. According to Plaintiff, he worked formerly as a home attendant but he believed he was no longer able to work due to constant back pain, headaches, depression, and difficulty breathing. *Id.* at 34, 36. Further, Plaintiff said he was unable to "concentrate on anything" and could not concentrate "even a minute." *Id.* at 38.

Plaintiff said he went to a doctor for treatment for his breathing, ulcer, and back. (Doc. 12-3 at 35). He stated that he took prescription Tylenol "for back pain, ulcer pain, headaches and body pains." *Id.* at 36. Plaintiff explained it did not take his pain away, but was "[o]nly enough . . . to bear it." *Id.* Also, Plaintiff used a nebulizer to help him breathe "[t]wo or three times a day plus two or three times at night." *Id.* at 39. Further, Plaintiff reported he went to an adult daycare center for treatment of his depression, and he had suicidal thoughts "[a]bout two or three times a day." *Id.* at 35, 38.

He reported that he lived with his wife and three children in an apartment, and he required assistance with showering and selecting clothes. *Id.* at 31-32. He stated that he used to cook but no longer did so, and he was unable to do the laundry. *Id.* Plaintiff believed he could "only help out [with] very light things." *Id.* Plaintiff stated that he did not have any hobbies, and he did not do activities such as reading, watching television, listening to music, or seeing movies. *Id.* at 32-33). Plaintiff said he needed a lot of rest, and would lie down two to three times a day, about thirty minutes each time. *Id.* at 36-37. However, Plaintiff said he visited with friends or family if his children transported him there. *Id.* at 33.

Plaintiff stated he had "difficulty sitting a long time," and estimated he was able to sit for "10 minutes or so." (Doc. 12-3 at 35). In addition, Plaintiff testified he had difficulty standing and

walking, and estimated he could stand "[a]bout five minutes," and "walk [a] few steps out of the front door and back." *Id.* Further, Plaintiff believed he was unable to "lift anything heavy," and stated at most, he could lift "a can of soda to drink." *Id.* According to Plaintiff, any "exertion activity" made it difficult to breathe, and it took "[a]bout 30 minutes" for his breathing to return to normal after any exertion. *Id.* at 39.

Vocational expert Thomas Dachelet ("VE") testified after Plaintiff at the hearing. (Doc. 12-3 at 40). The ALJ asked the VE to consider "a hypothetical person of the claimant's age, education and work history." *Id.* In addition, the individual "could have no concentrated exposure to dust, fumes, gases, odors or poor ventilation," and was "limited to simple routine and repetitive work." *Id.* The VE opined such a person could not perform Plaintiff's past relevant work as defined by the *Dictionary of Occupational Titles*,[2] but was could do the work "as performed" by Plaintiff. *Id.* at 41.

Likewise, if the person "could lift 50 pounds occasion, 25 frequently, sit, stand and or walk 6 out of 8 hours," the VE determined the work could be done as performed by Plaintiff. (Doc. 12-3 at 41). However, if the individual "could lift 20 pounds on occasion and 10 frequently," he would be unable to perform Plaintiff's past relevant work, either as defined by the *DOT* or as performed by Plaintiff. *Id.*

C.  **The ALJ's Findings**

Pursuant to the five-step process, the ALJ determined Plaintiff did not engage in substantial gainful activity since the application date of April 16, 2008. (Doc. 12-3 at 14). Second, the ALJ found Plaintiff had the following severe impairments: breathing problems and depression. *Id.* at 15. These impairments did not meet or medically equal a listing. *Id.* at 16-17. Next, the ALJ determined:

> [T]he claimant has the residual functional capacity[3] to perform a full range of work at all exertional levels, but with the following nonexertional limitations: he must avoid concentrated exposure to dust, fumes, gases, odors, and poor ventilation[.] Mentally, the claimant is limited to simple routine, repetitive work.

---

[2] The *Dictionary of Occupational Titles* ("*DOT*") by the United States Dept. of Labor, Employment & Training Admin., may be relied upon "in evaluating whether the claimant is able to perform work in the national economy." *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990).

[3] The residual functional capacity is a determination of what a claimant "can still do despite [his] limitations." 20 C.F.R. § 404.1545.

*Id.* at 17. With this RFC, Plaintiff was capable of performing past relevant work as an in-home care provider/home attendant. *Id.* at 20. Therefore, the ALJ concluded Plaintiff was not disabled as defined by the Social Security Act. *Id.* at 21.

## DISCUSSION AND ANALYSIS

The listings set forth by the Commissioner "define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing any gainful activity, not just 'substantial gainful activity.'" *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990) (citation omitted, emphasis in original). At step three of the sequential evaluation, the claimant bears the burden of demonstrating his impairments equal a listed impairment. *Bowen v. Yuckert*, 482 U.S. 137, 141, 146 n. 5 (1987); 20 C.F.R. §§ 404.1520(d), 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is conclusively presumed to be disabling, the evaluation proceeds to the fourth step." *Bowen*, 482 U.S. at 141; *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999). The ALJ determined Plaintiff's physical impairments did not meet or medically equal the criteria of Listings 3.03 pertaining to asthma. (Doc. 12-3 at 16). However, Plaintiff argues, "The objective evidence testing contained within this record demonstrates that [he] meets and/or equals Listing 3.02A and §3.02B. (Doc. 15 at 6).

When a claimant suffers from an illness affecting the respiratory system, "[p]ulmonary function testing is required to assess the severity of the respiratory impairment." 20 C.F.R. Pt. 404, Subpt. P., App. 1, Listing 3.00(A). Results from a spirometry, or pulmonary function test, "should be reproducible for both pre-bronchodilator tests and, if indicated, post-bronchodilator tests." Listing 3.00(E). The Regulations explain: "A value is considered reproducible if it does not differ from the largest value by more than 5 percent or 0.1L, whichever is greater." *Id.*

Notably, by considering Listing 3.03, the ALJ also considered Listing 3.02, which directs the ALJ to "[e]valuate under the criteria for chronic obstructive pulmonary disease in 3.02A." Listing 3.03A. The ALJ noted the spirometry reports "showed critically low readings, but the results were neither acceptable nor reproducible." (Doc. 12-3 at 17-18) (citing Doc. 12-8 at 3-12). Indeed the results from August 2010, which Plaintiff asserts demonstrate he satisfies Listings 3.02A and 3.02B indicate they were not reproducible. (Doc. 12-5 at 11). The Supreme Court explained, "For a

claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. at 530 (emphasis in original).

Because Plaintiff's test results were not reproducible, they fail to satisfy the testing requirements of the Listings. Therefore, the ALJ did not err in finding that Plaintiff's impairments do not meet or medically equal a listing.

## CONCLUSION AND ORDER

The ALJ's determination at step three of the sequential evaluation that Plaintiff's breathing impairment did not meet or medically equal a listing must be upheld by the Court, because the ALJ applied the proper legal standards. *See Sanchez*, 812 F.2d at 510.

Accordingly, **IT IS HEREBY ORDERED**:

1. The decision of the Commissioner of Social Security is **AFFIRMED**; and
2. The Clerk of Court **IS DIRECTED** to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security, and against Plaintiff Khou M. Chang.

IT IS SO ORDERED.

Dated:   **September 28, 2012**            /s/ Jennifer L. Thurston
                                           UNITED STATES MAGISTRATE JUDGE